DeCICCO, Senior Judge:
A general court-martial composed of members convicted the appellant, Sergeant Dufour, contrary to his pleas, of violating a general order prohibiting possession of drug paraphernalia, wrongful possession of marijuana and methamphetamine, wrongful use and distribution of methamphetamine, and wrongful receipt of stolen property in violation of Articles 92, 112a and 134, Uniform Code of Military Justice, 10 U.S.C. §§ 892, 912a, 934. His approved sentence consisted of confinement for 6 months, reduction to the lowest enlisted pay grade and a bad-conduct discharge.
In this appeal, he argues that the military judge erred by failing to suppress the evidence obtained as a result of a search of his assigned government quarters and that his sentence is too severe considering the delay of over 2 years for the convening authority to act in his case.[1] We have concluded, however, that the findings and sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the appellant was committed. Therefore, we affirm.

Facts

The facts surrounding the search issue are not in dispute. The appellant and his family resided on base at Camp Pendleton in assigned government quarters, 305-B Cherry Road. His residence was part of a duplex that was situated about 15-20 yards from the sidewalk. The front door and dining room window faced the street and sidewalk. The window was only a few feet to the right of the door. Appellate Exhibits XII and XIII. Between the sidewalk and the structure was *773 a lawn without a fence or any other type of obstruction.
On the evening of 18 October 1991, the Provost Marshal’s Office received an anonymous telephone call that illegal drug activity was taking place at 305-B Cherry Road. The dispatcher notified two military policemen, Lance Corporals [LCpl] Blanchard and Martinez to proceed to that location to investigate. Blanchard and Martinez parked their vehicle behind the appellant’s quarters and approached the front of the residence on foot. From the sidewalk in front of the building, Blanchard noticed that the curtain on the window in front of the house was open about six to twelve inches on the left side, allowing him to see inside the quarters.
From that vantage point on the sidewalk, he could faintly see a flame or candle and several persons seated around it. He stated that he saw persons periodically lean over the flame, but he could not see exactly what they were doing. At this point, Blanchard approached the building to within 2 feet of the window where he could clearly see four persons (the appellant, the appellant’s wife, Private First Class [PFC] Reed and PFC Riddle) sitting at a table. A lighted candle and a glass pipe were on the table. He further observed two of the persons (later identified as Reed and Riddle) smoking the glass pipe over the flame. He also noticed a fifth person (Caudill) sitting on a nearby couch.
After remaining outside about 30 minutes, Blanchard and Martinez were joined by Staff Sergeant Harbrick, the duty roving supervisor. Several minutes later, Caudill left the quarters, leaving the front door ajar about a foot. As Caudill passed the three military policemen, he was detained for suspicion of use of controlled substances. Without any prompting, Caudill blurted out “we’ve been smoking weed.” They notified the Provost Marshal’s Office of what they had seen and heard, and the watch commander authorized them to enter the appellant’s quarters. They knocked on the partially open door and entered before receiving a response. They did not have a written search authorization. They advised the persons inside that they were being detained for suspicion of the use of illegal drugs. After being asked about the glass pipe, the appellant’s wife stated, “I’ll show you where it is” and handed Blanchard a tin plate containing marijuana and drug paraphernalia.
Later in the evening, the appellant signed a consent to search form. He allowed the investigators to search the ground floor of his residence, but denied consent to search upstairs where his children were sleeping. A bag of methamphetamine and additional drug paraphernalia were recovered.
At trial, the appellant moved to suppress the illegal drugs and drug paraphernalia seized at his residence. The military judge denied the motion to suppress and made extensive findings. Record at 127-35. He found that the law enforcement officers did not become “peeping Toms” by climbing trees or ladders, and that the front of the house was an area where anyone could walk by to or from the house, as Caudill did when he left. He also found that the evidence was being dissipated, thereby creating a need to enter the premises immediately. Finally, he found the appellant’s consent to search voluntary based on the explanation of his rights to him by the investigator, the fact that he refused consent to a portion of his home, and giving due consideration to his rank and experience.
The court-martial was completed on 24 April 1992, and the military judge authenticated the record of trial on 25 August 1992. However, the convening authority did not act on the case until 9 August 1994. No reasons were given for the delay.

Discussion

The Search Issue

Military law recognizes a right of privacy in government quarters, and the Fourth Amendment protects both the interior of a home and the land immediately adjacent to it. United States v. Kaliski, 37 M.J. 105 (C.M.A.1993). It is also well settled that looking into the window of a private residence is a search. Id. The question is whether such a search was reasonable. A plain view observation does not constitute a search if made from a place where the ob *774 server has a right to be. In Kaliski, the Court held that the observers had no right to peek through a private patio door. In the case at bar, the investigators were following up on an anonymous tip that gave them cause to investigate. The act of walking along a sidewalk in front of a residence is not intrusive, and a plain view observation from such a location does not constitute an unreasonable search. United States v. Wisniewski, 21 M.J. 370 (C.M.A.), cert, denied, 476 U.S. 1160, 106 S.Ct. 2281, 90 L.Ed.2d 723 (1986). In this light, we find it was reasonable for the military police to have gathered information from the sidewalk vantage point.
The appellant argues that the search became unreasonable when Blanchard and Martinez walked up to within two feet of the appellant’s dining room window and peered inside. This is an interesting issue.[2] We need not decide it because of the facts in this case. Based on the information from the anonymous tip, the observations from the sidewalk, and finally Caudill's statement to the investigators that the individuals inside the residence were “smoking weed,” we have concluded that the police had sufficient probable cause to search the premises even in the absence of the information they gathered from their observations just outside the window.
Since we have decided that the discovery of the evidence inside the residence was inevitable once probable cause to enter was established, we must examine whether any of the factors contributing to the probable cause resulted from exploitation of police illegality. See Kaliski, 37 M.J. at 109. Again, we need not determine whether the close-up observations constituted an unreasonable search. However, since the statement from Caudill came after this search, we must consider whether the statement from Caudill resulted from exploitation of the close-up search through the window.
After exiting the residence, Caudill, without any prompting, stated “We’ve been smoking weed.” Record at 237. This statement was an independent act of free will which broke the chain of causation between the close-up observation through the window and subsequent events. See Kaliski 37 M.J. at 105. Therefore, even if the close-up observations through the window constituted an unreasonable search, all the factors constituting probable cause to enter the residence were independently established and would have been established even if the policemen had not approached the window for a closer look.
Military Rule of Evidence 315(f) defines probable cause as existing “when there is a reasonable belief that the person, property, or evidence sought is located in the place or on the person to be searched.” The combination of the three factors, i.e., the tip, the observations from the sidewalk, and Caudill’s statement, established probable cause in this case. This probable cause exists independent of the observations of the investigators from right outside the window. In other words, if the police had stayed on the sidewalk and had never ventured any closer to the house, the outcome would not have been any different. They knew about the tip, they had seen suspicious activity from the sidewalk, and they certainly would have seen Caudill exit the residence, they would have detained him and heard his statement as they eventually did.
Caudill’s declaration not only helped to provide the police with the probable cause to search but also the right to enter the appellant’s quarters without a search authorization because exigent circumstances required immediate entry. Military Rule of Evidence 315(g) states:
A search warrant or search authorization is not required under this rule for a search based on probable cause when:
(1) Insufficient time. There is a reasonable belief that the delay necessary to obtain a search warrant or search authorization would result in the removal, destruction, or concealment of the property or evidence sought; ...
Similarly, case law has held that law enforcement officers may conduct a warrantless entry when they have probable cause to believe that drugs are being consumed inside a *775 building. United States v. Johnson, 660 F.2d 749 (9th Cir.1981); United States v. Turner, 650 F.2d 526 (4th Cir.1981); United States v. Acevedo, 627 F.2d 68 (7th Cir.1980); United States v. Gray, 626 F.2d 102 (9th Cir.1980). In United States v. Acosta, 11 M.J. 307, 313 (C.M.A.1981), the Court stated:
... we can conceive of no greater exigency requiring immediate action than the perceived present active use of debilitating drugs by specific service-persons. To require a person in authority who is exposed to such an emergency situation to put the situation “on hold” while he seeks authorization from a magistrate would only exacerbate the threat. The reasonable application of the Fourth Amendment does not demand this.
Under the facts at hand, basic law enforcement experience and common sense indicated that any delay waiting for a search authorization could very well have resulted in the removal, dissipation or destruction of relevant evidence.
The appellant also contends that the consent to search his home was involuntary. A determination that consent to search was voluntary must be based on clear and convincing evidence and consideration of the totality of the circumstances. Military Rule of Evidence 314(e). Mere submission to the color of authority of law enforcement personnel is not a voluntary consent. See Acosta, 11 M.J. at 307. The appellant maintains that the atmosphere surrounding his signing the consent form was coercive. Other facts considered by the military judge included that the investigator went over the consent form with the appellant in some detail, that the appellant actually refused consent to search a part of his quarters, and that the appellant was a Marine Corps Sergeant with extensive military experience. Considering, the totality of the circumstances, the military judge’s finding is supported by the evidence and a correct view of the law. United States v. Kitts, 43 M.J. 23, 28 (1995).
Therefore, in light of the above, we find that the military judge did not abuse his discretion in admitting the disputed evidence over defense objection.

The Delay in Accomplishing the Convening Authority’s Action

The unexplained 2-year delay between authentication of the record of trial and the action of the convening authority was inordinate. The year and a half delay between authentication and the completion of the staff judge advocate’s recommendation was also unacceptable, even for this complex case. Although we have expressed our condemnation of such delays, we will not afford relief in the absence of some real harm or legal prejudice flowing from the delay. United States v. Jenkins, 38 M.J. 287 (C.M.A.1993); United States v. Henry, 40 M.J. 722 (N.M.C.M.R.1994). While the appellant has alleged in his summary assignment of error that he suffered prejudice due to the delay, he has not established and demonstrated it. Therefore, we will not afford him relief. Further, the sentence was appropriate for the offenses the appellant committed.

Decision

Accordingly, the findings and sentence, as approved on review below, are affirmed.
Senior Judge KEATING and Judge CLARK concur.

. I. THE MILITARY JUDGE ERRED BY FAILING TO SUPPRESS THE EVIDENCE OBTAINED AS A RESULT OF THE UNLAWFUL SEARCH OF APPELLANT'S QUARTERS.
II. A SENTENCE INCLUDING A BAD-CONDUCT DISCHARGE IS INAPPROPRIATELY SEVERE IN LIGHT OF THE PREJUDICE SUFFERED BY THE APPELLANT DUE TO THE TWO-YEAR DELAY BY THE CONVENING AUTHORITY IN ACTING ON HIS COURT-MARTIAL. (CITATIONS OMITTED.)

. See United States v. Dunn, 480 U.S. 294, 107 S.Ct. 1134, 94 L.Ed.2d 326 (1987).